## Poor District of Curwensville Borough, Plff. in Err., *v.* Poor District of Knox Township.

The borough of C. procured an order of removal of M., a pauper, to K. township. K. appealed. It was admitted that M. was born October 13,

NOTE.—Ordinarily children unemancipated, and unable to care for themselves, acquire the same settlement as that of the parent. Union Twp. v. Monroe Twp. 8 Kulp, 521; Fermanagh Twp. v. Walker Twp. 4 Clark (Pa.) 32. And this is true when the pauper attains majority, and is incapable of self-support. Montoursville v. Fairfield Twp. 112 Pa. 99, 3 Atl. 862; Shippen v. Gaines, 17 Pa. 38. In POOR DISTRICT v. POOR DISTRICT, it was found as a fact that the pauper was capable of supporting herself.

1861, and lived with her father, R., who had a settlement in B. township until May 12, 1881, when R. moved to K., where he lived for four years. In 1882, 1883 and 1884, R. was assessed in K. and paid the taxes for 1882 and 1883. M. never lived with R. in K. or received support from him after his removal thither. In January, 1881, and for three or four months thereafter M., by order regularly issued, received relief from L. township where she was then living. The court found, besides, that since the age of five years M. had been weak and simple-minded, but was not a lunatic, and supported herself in L. township from the time she ceased receiving relief until September, 1884. *Held,* that M. was chargeable on C.

(Argued May 4, 1887. Decided May 16, 1887.)

January Term, 1887, No. 389, E. D., before Mercur, Ch. J., Gordon, Trunkey, Sterrett, and Green, JJ.  Error to the Quarter Sessions of Clearfield County to review a judgment discharging an order of removal of a pauper.   Affirmed.

This was an appeal from the order of removal of Mary Ellen Thompson, a pauper, from the poor district of Curwensville borough to the poor district of Knox township.

The facts as found by Krebs, P. J., were stated in his opinion, which was as follows:

Counsel for plaintiff and defendant have admitted the following facts, namely:

First. That the pauper, Mary Ellen Thompson, was born on the 13th of October, 1861, and arrived at her majority on the 13th of October, 1882.

Second. That her father, Robert Thompson, prior to the 12th of May, 1881, and for a long time prior thereto, resided in Bloom township, Clearfield County, Pennsylvania, and his legal settlement was in Bloom township, immediately prior to the legal settlement gained by him in Knox township.

Third.  That Robert Thompson, father of the pauper, removed from Bloom township to Knox township, Clearfield county, Pennsylvania, on or about the 12th of May, 1881, and continued to reside in said township for a period of four years or more and until after the order of relief was issued on the 24th of September, 1884, and the pauper placed upon Curwensville borough.

Fourth. That Robert Thompson was duly assessed with public rates and levies during the years 1882, 1883, and 1884 in

Knox township, and did for the two successive years of 1882 and 1883 pay such a public rate or levy.

Fifth. That the pauper did not reside with nor receive any support from her father from the time he removed to and during the time he has resided in Knox township.

Sixth. That on the 21st of January, 1881, the pauper was the subject of and did receive relief from the poor overseers of Lawrence township, Clearfield county, Pa., by an order regularly issued, and that she continued to receive relief for three or four months, when she was discharged, or otherwise ceased to receive relief from the overseers of that township.

Seventh. That the amount expended by Curwensville borough, in her support, was $276.36.

In addition to the above-admitted facts, testimony was presented for and against the following facts:

First. Was the pauper an idiot or lunatic *a nativitate?*

Second. Did Robert Thompson acquire a settlement in Knox township, by lease, prior to the arrival of the pauper at twenty-one years?

Third. Was she (the pauper) emancipated in any way before the father gained a legal settlement in Knox township?

[Upon the first disputed fact, I conclude that while the testimony submitted shows that since the pauper was a child of five years old she was weak and simple-minded, she was not incapable of taking care of herself, from any mental or physical infirmity under which she labored; that she was not a lunatic, incapable of distinguishing right from wrong; that she had sufficient capacity, mentally and physically, to earn wages], and that so far as we have any evidence before us, she did support herself from the time she ceased to receive relief from Lawrence township until the 24th of September, 1884, when the order was taken in Curwensville borough.

[Upon the second disputed fact we find that there was no bona fide taking of a lease of any real estate of the yearly value of $10, etc. Robert Thompson did occupy an old cabin or house of J. P. Owens that had never been occupied as a dwelling-house and that Mr. Owens did say to him if he fixed the floors and windows he might occupy it.] That he did fix the floors and windows and roof; that he cleared off a garden patch, and fixed the fence around a field for some cow pasture. But Mr. Owens testifies that he never demanded or received any rent. The only

settlement that Robert Thompson acquired was by payment of public taxes for the years 1882 and 1883, and the settlement would not be complete until about the first of June, 1883, at the earliest.

The third question of dispute is a mixed question of law and fact, dependent upon other facts in this cause.

It is also a fact plainly apparent in the cause that on the 24th of September, 1884, when the order of relief was issued in Curwensville borough, the pauper had been for more than two years supporting herself, having been discharged by Lawrence township about June 1, 1881, at the latest, it being admitted that her father removed to Knox township May 12, 1881, and that she at no time resided with him or received any support from him.

It is well settled in this state that children who are incapable of taking care of themselves on account of some infirmity of body or mind do not become emancipated on their arrival at the age of twenty-one years, but may and can acquire a derivative settlement from the father. Washington v. Beaver, 3 Watts & S. 548; Shippen v. Gaines, 17 Pa. 38; Toby Twp. v. Madison Twp. 44 Pa. 60; Penn Twp. v. Selinsgrove, 2 Sad. Rep. 465.

It is also well settled that an insane child may become so far emancipated, by being removed from the father's house with his consent or by receiving support as a pauper, as to lose the ability or legal capacity to acquire a derivative settlement from the father. Washington Twp. v. East Franklin Twp. 3 Pennyp. 107; Penn Twp. v. Selinsgrove, 2 Sad. Rep. 465.

Was the pauper, therefore, an idiot *a nativitate,* or rather was she incapacitated by her mental infirmity from caring for and providing for herself? It is not necessary that she be an absolute idiot or a raving maniac. What the law seems to fix as the rule is incapacity to earn a support and care for oneself. She did support herself away from her father's control, prior to her arrival at her majority and afterwards. There is no evidence that the father controlled or restrained her, either as to her goings or her earnings, for some time prior to her arrival at the age of twenty-one years. [She is, undoubtedly, a weak, simple-minded creature, but still not wanting in that capacity to take care of herself that the law requires. It follows, then, that she became emancipated on her arrival at the age of twenty-one years.]

That this age is emancipation, or in law equivalent thereto, seems to be the conclusion of the court below and affirmed in the supreme court in Lewis v. Turbut, 15 Pa. 147.

[But in addition to this emancipation by the law upon her arrival at the age of twenty-one years is the admitted fact that she, as a pauper, eighteen months before she attained that age, received relief from the poor authorities of Lawrence township, with the assent of her father, so far as there is any evidence on the subject, and never after that received aid from him or was again a member of his family. This, we think, emancipated her, if her arrival at the age of twenty-one years did not; and she no longer possessed the ability to acquire a settlement derivatively from the father.]

It was decided in Washington Twp. v. East Franklin Twp. 3 Pennyp. 107, that "where a female child, living with her father, became insane at the age of eighteen years, and at the age of twenty-three years was charged as a pauper on the township in which she then lived, his subsequent removal to another township does not affect her status as a pauper or make her chargeable upon the township to which he removed" and in which he acquired a new settlement. To the same effect is Penn Twp. v. Selinsgrove, 2 Sad. Rep. 465.

It is true that in these cases the paupers were idiots. But that a child, who has been emancipated from her father's family, does not, except by her own act, acquire a settlement where her father subsequently goes to reside, scarcely needs authority for its support. Such is the undoubted result of Washington v. Beaver, 3 Watts & S. 548; Lewis v. Turbut, 15 Pa. 145; Springfield v. Wilbraham, 4 Mass. 493.

Having determined that the pauper, Mary Ellen Thompson, was not incapable of caring for and maintaining herself, and therefore not an idiot *a nativitate,* within the rule required by law, she became emancipated upon her arrival at the age of twenty-one years and before Robert Thompson had gained a new settlement in Knox township; and, therefore, she was not properly removed to Knox township, and the appeal by the overseers of Knox township must be sustained. But we do not wish to conclude Curwensville borough overseers by an order made in the case, if they should be able to show that the pauper had acquired a settlement by her own acts elsewhere, or that her last settlement was the settlement of her father, prior to his removal

to Knox township; that is a question which we leave until the parties may be brought before us and fully heard.

We think the rules laid down by Chief Justice GIBSON, in West Buffalo v. Walker Twp. 8 Pa. 180, should be qualified by the supreme court.

And now, February 7, 1887, the order of removal is discharged.

The plaintiff presented, *inter alia,* the following points:

"1. If the pauper be not an idiot, the last legal place of her settlement was in Knox township, by virtue of the lease or the equivalent, to the pauper's father, from J. P. Owens. The rent may be, and was, paid in labor and improvements by lessee."

*Ans.* The point is affirmed as an abstract proposition of law. But a careful examination of the testimony fails to disclose the payment of any rent. The work done was done entirely for the comfort of the father of the pauper, no rent being charged or asked for, the premises never, since he vacated them, having been occupied, and he being allowed to occupy them only as a favor, without expectation of pay by the owner.

"5. The court, in pauper cases, is the judge of the facts as well as the law; and a fair and reasonable test of the pauper's idiocy is as follows: If the pauper were indicted for larceny, and on trial the defendant submitted the same testimony that plaintiff has in this case, would the court permit a verdict of guilty to stand?"

*Ans.* To this point we make answer that in our opinion the true test is: Was the pauper of sufficient mental and physical capacity to earn her own support and maintain herself? We find, as a fact, that she had this capacity, mentally and physically; and we believe this to be true, not only from the evidence of witnesses in the cause, but from a personal knowledge of the pauper herself, and of her mental and physical condition.

"6. Under the law and the evidence in this case the pauper has been an idiot or *non compos mentis* since childhood, and hence did not become emancipated at twenty-one years of age. Therefore her settlement follows that of her father."

*Ans.* We decline to affirm this point; and for our reasons for refusal refer to the finding of facts and opinion filed.

"7. Under the law and the facts in this case, the last legal place of the settlement of the pauper, derivative from the father

was in Knox township; and therefore the defendant is liable, and the order of removal should be sustained and the appeal dismissed."

*Ans.* We decline to affirm this point, and for answer refer to our opinion.

The assignments of error specified the answers to the points quoted and the action of the court in discharging the order of removal.

*W. C. Arnold,* for plaintiff in error.—The pauper had a legal place of settlement in Knox township, derivative from her father, by his lease of, and residence on, real estate for one year, of the value of $10; this prior to the pauper's arrival at the age of twenty-one years.

A lease is a contract for the possession, etc., of lands, etc., on one side, and a recompense of rent or other income on the other. Bac. Abr. title, *Lease.*

Rent is a certain profit in money, chattels or labor. 2 Bl. Com. 41.

In this case Owens gave Thompson possession and Thompson paid the rent in chattels and labor, furnishing lumber to the value of $7, laid two floors, put in window frames and door frame, repaired the roof, and cleared half an acre of ground. Owens testifies to all this, and further says:

"When Thompson moved into my house he was to make some improvements; fix windows and doors, lay floor, and repair roof."

Again; Owen testifies: "If Thompson made these improvements to the house, and cleared up the ground, he was to have the use of both."

If this be not a parol lease of real estate and payment of the rent, it would, indeed, be a difficult matter to show one. The defendant may say that Owens testifies in cross-examination that he never made any charge to Thompson for rent or received anything from him for it. It is true he may not have charged him on his books, and did not receive anything from him in cash. (Owens is not a lawyer.) But it is clear he did receive considerable, in improvements to his house and lands; and these improvements were the consideration in the parol agreement for the premises. (Owens is a resident and taxpayer in Knox town-

ship, and his testimony shows that he is an evasive and unwilling witness.)

Rent may be paid in chattels or labor, and the lease was bona fide. Beaver Twp. v. Hartley Twp. 11 Pa. 254; also Poor District v. Poor District, 98 Pa. 636.

Robert Thompson, father of the pauper, had gained a legal settlement in Knox township (without reference to the lease) on June 20, 1883, by the payment of "public taxes," for "two years successively." There was no emancipation of the pauper at twenty-one years of age, because she was an idiot; and therefore her legal settlement was in Knox township—derivative from her father. In contemplation of law the pauper was an idiot. Upper Milford v. Lower Maccungie, 3 Whart. 71.

But the defendant will say, as the lower court has intimated, that because the pauper did not reside with, or receive support from, her father while he resided in Knox township, she became emancipated. Our answer is that whether she received support from her father, or resided with him, is not the question in this case. The true inquiry is: Was her condition such that she needed the protection of her father? If the father refused or neglected to care for her, or she refused to stay with her father and roamed aimlessly about, as an idiot would, this will not cause her emancipation. Washington v. Beaver, 3 Watts & S. 548; Montoursville v. Fairfield Twp. 112 Pa. 99, 3 Atl. 862.

The position of the court below is practically as follows: "That the inhumanity of the father or the imbecility of the child relieves the defendant from liability."

*Singleton Bell,* for defendant in error.—It is not shown that any rent was paid to Owens; he swears that he received no rent in cash, goods or labor, and there is no testimony that the work done by Thompson to the shanty and ground made them more valuable at the time he removed from them than they were when he arrived there.

Owens has derived no benefit from the alleged improvements to the house nor from the clearing, and the testimony would indicate that none can be obtained.

In Beaver Twp. v. Hartley Twp. 11 Pa. 254, cited by the plaintiff in error, the use of the house was part of the pay of an operative, in consideration of which he was induced to accept less wages than he would have otherwise received.

Nor is there any evidence that the premises were of the yearly value of $10.

To gain a settlement by lease the act of assembly must be strictly complied with. Poor District v. Poor District, 98 Pa. 636.

The plaintiff assigns as error the rule laid down by the court below as the proper test of the pauper's idiocy, *viz.:* "Was the pauper of sufficient mental and physical capacity to earn her own support and maintain herself?"

In Washington v. Beaver, 3 Watts & S. 548, the court held that the pauper who was admittedly a lunatic did not become emancipated because from his helpless condition he was incapable of contracting any relation inconsistent with the idea of being a part of his father's family.

In Penn Twp. v. Selinsgrove, 2 Sad. Rep. 465, the court below stated the test as "some infirmity of body or mind which renders them incapable of taking care of themselves."

In Upper Milford v. Lower Maccungie, 3 Whart. 71, the evidence shows that the pauper was unable to support herself (could do no housework except sweep), and her brother and sister constantly contributed to her maintenance; yet the court declined to say whether or not she lacked the mental capacity required to gain a settlement.

Robert Thompson gained a settlement in Knox township by the payment of taxes on June 20, 1883, and the pauper being then past the age of twenty-one years and not a part of her father's family, her settlement would not follow the new settlement of the father. If she were not an idiot *a nativitate,* she had been already emancipated upon becoming twenty-one years of age. Lewis v. Turbut, 15 Pa. 145.

If she be deemed an idiot the case is within Washington Twp. v. East Franklin Twp. 3 Pennyp. 107, in which the court held that an insane pauper who had become a public charge ceased to be a part of her father's family, and that her settlement was in the district in which the father resided at the time she became a public charge, and not in another district to which the father subsequently removed, and in which he gained a settlement after the pauper attained her majority.

PER CURIAM:
While we do not agree with the court in all the reasons stated

by it, yet we concur in its conclusion in holding the pauper chargeable on the poor district of the borough of Curwensville.

Judgment affirmed.